IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JACK GORMAN                    :         CIVIL ACTION
                               :
        v.                     :
                               :
ALLEN JACOBS, et al.           :         NO. 08-2097

MEMORANDUM

Dalzell, J.                              February 9, 2009

        Plaintiff Jack Gorman, a doctor of podiatric medicine,

sued defendants Allen Jacobs, DPM, John Levin, DPM, and Richard

Benjamin, DPM, for defamation and related state law torts based

on the comments each of them wrote on the Podiatry Management

Online's news forum, PM News, "The Voice of Podiatrists" ("PM

News").  Dr. Gorman initially filed three separate but related

suits.  See Gorman v. Levin, C.A. No. 08-2098; Gorman v.

Benjamin, C.A. No. 08-2099.  We consolidated the three cases

under C.A. No. 08-2097, originally filed only against Dr. Jacobs.

        The defendants have moved to dismiss the claims against

them under Fed. R. Civ. P. 12(b)(2) for lack of personal

jurisdiction and 12(b)(6) for failure to state a claim.  Because

we find that we do not have personal jurisdiction over the

defendants, we do not reach the question of whether Dr. Gorman

has stated a claim upon which relief can be granted.

I.   **Factual Background**

On August 27, 2007, the online publication Phillyburbs.com published an article that included an interview with Dr. Gorman.  A portion of that article (herein, "the article") was republished on August 30, 2007 in the Malpractice News section of PM News.  We reproduce the article as it was republished on PM News:

> PA Podiatrists Get Some From High Malpractice Premiums
>
> A leading Pennsylvania malpractice insurance carrier says it plans to lower its rates by an average of 11 percent next year.  Podiatrist Jack Gorman, of the Bux-Mont Foot & Ankle Care Center in Warminster, said, "Everything helps, but we're really in a deep hole here."  For years, Pennsylvania doctors have been fighting for relief from the high cost of medical malpractice insurance.
>
> Gorman said competition between the insurance companies is less likely to drive down premiums since the carriers often insure some specialties but not others. "If you can get that insurance, it'll help," he said. "It's always nice to get some relief, but not everyone's getting it."  He said it is still simply too expensive for some doctors to afford insurance and, with a growing population of elderly adults, the problem is likely here to stay.  "It's not as bad as it was, but it's certainly not a good situation," said Gorman.
>
> It is also one that could make it harder for some doctors to make sure their treatment decisions are based solely on what is best for the patient, he admitted.  "Most (doctors) I talk to try to avoid doing surgery with a passion," said Gorman, who added many prefer to have other doctors perform the procedures.

"Sometimes, they over-order tests to make sure they
cover everything."

Source: John Anastasi, PhillyBurbs.com [8/27/07]

PM News, http://www.podiatrym.com/search3.cfm?id=15434 (last

visited Feb. 5, 2009); Levin Mem. at 3.

On August 31, 2007,[1] Dr. Benjamin posted a comment on

PM News about the article:

I had to laugh at the comments by Dr. Gorman with
respect to rising malpractice costs in PA. As a well
known plaintiff's expert, he is one of the reasons for
the rising cost in malpractice for podiatrists. His
willingness to travel anywhere and say anything to
support frivolous claims is proof enough that
plaintiff's experts need to answer for their actions
when the defense wins or a claim is thrown out.

PM News, http://www.podiatrym.com/search3.cfm?id=15452; Compl.

against Benjamin Ex. A at 6-7 (C.A. No. 08-2099).

On September 1, 2007, Dr. Levin wrote this comment on

PM News:

I have to echo Dr. Benjamin's comments regarding Dr.
Gorman. I too was involved in a case in which he
testified, under oath that an amputation of a lesser
digit, with osetomyelitis/septic joint, confirmed by
biopsy was below the standard of care. His affidavit
was filled with inaccuracies and totally lacked any

_____

[1]There is some uncertainty about when the comments were
posted to the web site.  The parties agree that the web site
included these comments in the September 14, 2007 newsletter sent
out to the subscribers of PM News.  The dates we cite are from
the web site.

3

reasonable scientific rationale for his conclusions.
Even after being furnished with MRI reports, plain film
x-rays and definitive bone biopsy results, and in spite
of failure of six weeks of antibiotic therapy, Dr.
Gorman chose to give false testimony regarding the true
standard of care. I was dragged into this case which
took over two years to resolve.

While I was finally dropped from the suit, at what cost
to PICA? The case settled against one of our colleagues
who did nothing wrong medically but just happened to
have a post-operative complication from a hammertoe
surgery that lead to osteomyelitis of the digit and
adjacent metatarsal head. Once conservative therapy
failed the definitive procedure was performed, (a
digital amputation and distal ray resection) the
patient healed uneventfully and actually had a quite
functional result.

PICA paid over 70K for the claim against the operating
surgeon in addition to the costs of my defense in this
case. People like Dr. Gorman need to be "outed" They
add to the cost of medical care and malpractice
insurance. He is nothing more than a leech on system
who seeks to profit at his colleagues expense. What a
hypocrite to sand up and claim the costs are out of
control and that were "in a deep hole." Jack, without
people like you, the system might not be as bad off.
Shame on you!

PM News, http://www.podiatrym.com/search3.cfm?id=15470 (last

visited Feb. 5, 2009); Compl. against Levin Ex. A at 8 (C.A. No.

08-2098) (all errors in original).

On September 3, 2007, Dr. Jacobs wrote,

I would like the PM readers to consider the following with
regard to those who offer outrageous testimony inconsistent
with podiatric/medical fact. Prepare a detailed case and
petition the PA State Board of Podiatry (or wherever), ABPS,
ACFAS to consider ethical violations with subsequent

sanctions or admonitions. Prepare a detailed and proper
complaint with the assistance of a lawyer. Provide
appropriate references.

If the testimony is that egregious and outrageous,
demand a review for ethical violations. No one is
suggesting that you cannot provide testimony in support
of a plaintiff; however, such testimony must be
truthful. Once the "experts" such as Drs. Gorman, Boc,
etc. are cited for the failure to provide truthful
testimony, they will be finished as experts, as every
subsequent deposition and courtroom testimony will
include a history of being cited for untruthful
testimony. In addition, there is always the possibility
of loss of ACFAS fellowship status or better yet, ABPS
diplomate status for unethical behavior. Even a letter
of condemnation or warning from such organizations
would provide the jury with a true picture of the
"expert."

One other matter: If a college protects a full-time
plaintiff paid confabulator, let the college know that
you will not support the organization.

PM News, http://www.podiatrym.com/search3.cfm?id=15484 (last

visited Feb. 5, 2009); Compl. against Jacobs Ex. A at 8.

        Dr. Gorman sued each of the defendants alleging

intentional and negligent defamation, false light invasion of

privacy, intentional infliction of emotional distress, and

negligent infliction of emotional distress.  The defendants each

filed a motion to dismiss for lack of personal jurisdiction and

for failure to state a claim.  All aver that they are not

residents of, nor do they have contacts with, the Commonwealth of

Pennsylvania.  Jacobs Mot. ¶ 13; Levin Mem. Ex. 2; Benjamin Mem.

Ex. D.[2]  Dr. Gorman concedes that the only contacts the
defendants have with the forum are through their Internet
activity.

## II.  __Analysis__

        If a defendant raises the defense of lack of personal
jurisdiction, the burden shifts to the plaintiff to establish
"with reasonable particularity sufficient contacts between the
defendant and the forum state."  Provident Nat. Bank v. Cal. Fed.
Sav. & Loan Ass'n., 819 F.2d 434, 437 (3d Cir. 1987); see also
Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217,
1223 (3d Cir. 1992).  Although we accept as true the allegations
in the complaint, grant all reasonable inferences therefrom, and
resolve all factual disputes in the plaintiff's favor, the
plaintiff still "must respond with actual proofs, not mere
allegations."  Patterson v. Federal Bureau of Investigation, 893
F.2d 595, 604 (3d Cir. 1990).

        We have "personal jurisdiction over non-resident
defendants to the extent authorized under the law of the forum

---

        [2]Dr. Gorman alleges that Drs. Benjamin, Levin, and Jacobs
are from Washington D.C., Florida, and Missouri, respectively.
Compl. against Benjamin ¶ 3; Compl. against Levin ¶ 3; Compl.
against Jacobs ¶ 3.

state."  Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d

28, 31 (3d Cir. 1993).  Under Pennsylvania's long-arm statute,

personal jurisdiction "extend[s] to all persons...to the fullest

extent allowed under the Constitution of the United States and

may be based on the most minimum contact with this Commonwealth

allowed under the Constitution of the United States."  42 Pa.

Cons. Stat. Ann. § 5322(b).  Thus, Pennsylvania's long-arm

statute reaches as far as the Fourteenth Amendment's Due Process

Clause permits.  See, e.g., Mellon Bank, 960 F.2d at 1221.  The

Due Process Clause "limits the reach of long-arm statutes so that

a court may not assert personal jurisdiction over a nonresident

defendant who does not have 'certain minimum contacts with [the

forum] such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice.'"

Provident Nat'l Bank, 819 F.2d at 436-37 (quoting Int'l Shoe Co.

v. Washington, 326 U.S. 310, 320 (1945) (internal quotations

omitted)).

        A court can exercise general personal jurisdiction

consistent with the Fourteenth Amendment when a non-resident

defendant has engaged in "systematic and continuous" activities

in the forum state.  Helicopteros Nacionales de Columbia v. Hall,

466 U.S. 408, 414-16 (1984).  Dr. Gorman concedes that the

defendants have not engaged in such activities in Pennsylvania, but argues that their comments on PM News are sufficient to establish specific personal jurisdiction over them.  Pl.'s Resp. to Jacobs Mot. at ¶ 23; Pl.'s Mem. in Resp. to Levin Mot. at 4; Pl.'s Resp. to Benjamin Mot. at 1.

A court can exercise specific personal jurisdiction over a defendant if "the defendant had minimum contacts with the forum necessary for the defendant to have 'reasonably anticipate[d] being haled into court there.'"  Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 201 (3d Cir. 1998) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  To establish specific jurisdiction a plaintiff must show that the defendant "purposefully directed his activities at the forum[,] the plaintiff's claim must arise out of or relate to at least one of those specific activities[, and] the assertion of jurisdiction otherwise comports with fair play and substantial justice."  Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (internal quotations and citations omitted).

### A.   Calder and Zippo

To decide whether to exercise specific personal jurisdiction over an out-of-state defendant who made an allegedly

8

defamatory statement, we first turn to the effects test in <u>Calder</u>
<u>v. Jones</u>, 465 U.S. 783 (1984).  "The test focuses on the extent
to which Defendant's tortious conduct is aimed at or has effect
in the forum state."  <u>Barrett v. Catacomb Press</u>, 44 F. Supp. 2d
717, 729 (E.D. Pa. 1999).  In <u>Calder</u>, the plaintiff was a
California actress who sued both the Florida publisher and author
of an article that maligned her character and professionalism.
465 U.S. at 788-89.  The Supreme Court held that California had
personal jurisdiction over the defendant because the actress's
career was centered in California, the defendants relied on
California sources, and the publication's largest circulation was
in California.  <u>Id.</u>  These facts were sufficient to establish
that the plaintiff suffered most of the harm in California and
the defendant "expressly aimed" that harm at California.  <u>Id.</u> at
784.

 Our Court of Appeals has clarified that the <u>Calder</u>
effects test requires the plaintiff to show that

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the
> forum such that the forum can be said to be the focal
> point of the harm suffered by the plaintiff as a result
> of that tort; [and]
> (3) The defendant expressly aimed his tortious conduct
> at the forum such that the forum can be said to be the
> focal point of the tortious activity[.]

IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1998).  To satisfy this test, it is not sufficient to "[s]imply assert[] that the defendant knew that the plaintiff's principal place of business was located in the forum...The defendant must manifest behavior intentionally targeted at and focused on the forum for Calder to be satisfied."  Id. at 265 (internal quotations omitted).

But here we have the added wrinkle of the Internet. Dr. Gorman's claims arise from the posting of allegedly defamatory comments on a web site.  We must therefore consider both the medium in which the statements were made and their content.

Judge McLaughlin's analysis in Zippo Mfg. Co. v. Zippo Dot Com., Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), has won wide acceptance as the best approach for courts to use in assessing whether a non-resident's Internet activities would justify the exercise of personal jurisdiction.  See, e.g., Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452-453 (3d Cir. 2003); Best Van Lines, Inc. v. Walker, 490 F.3d 239, 251 (2d Cir. 2007);  Revell v. Lidov, 317 F.3d 467, 470 (5th Cir. 2002); ALS Scan v. Digital Service Consultants, 293 F.3d 707, 714 (4th Cir. 2002); Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 890 (6th Cir.

2002); Soma Medical Int'l v. Standard Chartered Bank, 196 F.3d
1292, 1296 (10th Cir. 1999); Cybersell, Inc. v. Cybersell, Inc.,
130 F.3d 414, 418 (9th Cir. 1997).  In the context of the Calder
effects test, Zippo assesses whether the Internet activity in
question was expressly aimed at the forum state by examining both
the features of the web site and how the defendants used those
features.  Young v. New Haven Advocate, 315 F.3d 256, 262-63 (4th
Cir. 2002).

        Zippo uses a sliding scale for the exercise of personal
jurisdiction based on how the particular web site works.  952 F.
Supp. at 1124.  At one end of the scale are commercial
interactive web sites that "involve the knowing and repeated
transmission of computer files over the Internet," and through
which individuals actively engage in business with residents of a
foreign jurisdiction.  Id.  Exercise of personal jurisdiction
over the individuals actively engaged in such Internet activity
is proper.  Toys "R" Us, 318 F.3d at 452.  At the other end of
the scale are passive web sites where information is posted and
users can only view it.  Zippo, 952 F. Supp. at 1124.  Activities
related to such web sites do not have sufficient contacts with
the forum to warrant the exercise of personal jurisdiction.  Id.
In the wide area between these two poles, we examine "the level

of interactivity and commercial nature of the exchange of
information that occurs on the web site" to decide whether the
exercise of personal jurisdiction is proper.    Id.

        Under the Zippo jurisprudence, how individuals use the
web site is equally, if not more, important than the features of
the web site itself.  Because one can access web sites from
anywhere, the defendant's Internet activity -- whether it be web
site operation or use -- must evince an intent to interact with
the forum to justify the exercise of personal jurisdiction.  Toys
"R" Us, 318 F.3d at 452 (exercise of personal jurisdiction
appropriate if "the defendant intentionally interact[ed] with the
forum state via the web site"); see also Young, 315 F.3d at 262-
63 ("application of Calder in the Internet context requires proof
that the out-of-state defendant's Internet activity is expressly
targeted at or directed to the forum state").  The "mere posting
of information or advertisements on an Internet website[3] does not
confer nationwide personal jurisdiction." Remick v. Manfredy,
238 F.3d 248, 259 n.3 (3d Cir. 2001).

_____

        [3] For the record, oed.com records that although in former
years it was referred to as Web site, it now states that it
should be uncapitalized and spaced as two lower case words.  See
http://dictionary.oed.com/cgi/entry/00305639?single=1&query_type=
word&queryword=web+site&first=1&max_to_show=10 (last visited Feb.
9, 2009).

Most cases applying Zippo concern the operators of web sites, but non-operator users of a web site can also be subject to personal jurisdiction. See, e.g., Machulsky v. Hall, 210 F. Supp. 2d 531 (D.N.J. 2002) (finding that the Internet business activities of eBay users with a New Jersey resident was insufficient to establish personal jurisdiction because the defendants demonstrated no intent to interact with the forum state); Barrett, 44 F. Supp. 2d at 728.  In Barrett, the defendant maintained both a passive web site and posted messages on various listserves.  Id. at 722.  These messages contained hypertext links back to the defendant's web site, which the plaintiff claimed contained defamatory statements about him.  Id. at 722.  Neither the defendant's passive web site nor her Internet activity on third-party listserves -- which were all said to be "national in scope" -- could establish personal jurisdiction because both the web site and the listserves "were accessible around the world and never targeted nor solicited Pennsylvania residents."  Id. at 728.  Thus, for a court to exercise personal jurisdiction based on the use of a web site (rather than its operation), something about the web site must suggest to the user that residents of the forum state are the target audience, e.g., Phillyburbs.com.

13

Exercise of personal jurisdiction would also be proper over defendants who made allegedly defamatory statements on the Internet if the content of the statements themselves are directed into the forum.  See Boschetto v. Hansing, 539 F.3d 1011, 1019 (9th Cir. 2008) ("Where [a web site] is used as a means for establishing regular business with a remote forum...a defendant's use of [that web site] may be properly taken into account for purposes of establishing personal jurisdiction.").  Simply (a) knowing that the plaintiff is in the forum state, (b) posting negative statements about the plaintiff's forum-related activities, and (c) referring to the forum in one's writing will not suffice to satisfy the Calder effects test.  Young, 315 F.3d at 264.

Young is instructive in this regard.  There, the plaintiff was a Warden of a Virginia prison that the State of Connecticut had contracted with to take Connecticut prisoners for whom there were not enough beds in Connecticut.  Id. at 259.  The defendant Connecticut newspapers, editors, and journalists had written articles posted on their web sites that referred to the prison and the Warden.  Id.  The Warden alleged that the articles contained defamatory statements about him -- including that he was a racist and encouraged the abuse of prisoners.  Id.  The

14

only evidence linking the articles to the Commonwealth of
Virginia was that the defendants referred to Virginia repeatedly
in the articles and knew that the prison and the Warden were in
Virginia.  Id. at 262.

Confronted with a long-arm statute equivalent in reach
to that of Pennsylvania's, the Fourth Circuit applied both the
Calder test and the Zippo analysis, and ruled that the district
court had no personal jurisdiction over the defendants.  Id. at
261, 264.  The Court reasoned that, although the articles
referred to Virginia, the focal point of the article was
Connecticut because the articles were concerned with Connecticut
policy, and the intended audience was the people of Connecticut.
Id. at 264.  The only references to Virginia and the Warden
consisted of facts essential to the writing of a sensible article
on this particular subject, and were necessary to place the
events into context.  Id.  A statement found on the Internet that
simply mentions the forum state and the plaintiff's relation to
it, without some other indication that the forum was the intended
target of the statement, cannot suffice to establish personal
jurisdiction over the statement's author.

15

B.    **The <u>PM News</u> Web Site and the**
      **Comments of Drs. Jacobs, Benjamin, and Levin**

There is no doubt that Dr. Gorman satisfies the first two prongs of the <u>Calder</u> effects test: he asserts a claim for an intentional tort, <u>i.e.</u>, defamation, and, as a resident and podiatrist in Pennsylvania, feels the brunt of the harm in the forum.  But Dr. Gorman cannot establish the third prong as to any of the three defendants.

The <u>PM News</u> web site is sufficiently interactive to make those who use it amenable to the exercise of personal jurisdiction.  <u>PM News</u> describes itself as "A FREE daily interactive e-mailed newsletter reaching over 11,000 podiatrists [that] disseminates topical news articles[, and to which] reader's [<u>sic</u>] send in queries and comments for other podiatrists to answer."  <u>PM News</u>, http://www.podiatrym.com/pmnews.cfm (last visit Feb. 5, 2009).  Anyone can subscribe to the <u>PM News</u> email newsletter by submitting their email address to the web site.  <u>PM News</u>, http://www.podiatrym.com/pmnews.cfm (last visit Feb. 5, 2009).  Anyone can access the current and past newsletters by going to the appropriate portion of the site.  <u>PM News</u>, http://www.podiatrym.com/pmnewsissues.cfm (last visited Feb. 5, 2009).  Anyone can send a comment or letter to be included in the

16

newsletter by emailing the editor of the newsletter.  Id.

Although it is a mediated exchange, PM News permits users and the

web site to exchange information, thereby making it an

interactive web site.  It is thus possible that we could have

personal jurisdiction through activity on the web site. Zippo,

952 F. Supp. at 1124.

But nothing about the web site from the user's point of

view announces that the web site would direct user comments into

Pennsylvania or any other particular state, and thus mere use of

the PM News web site does not establish intent to interact with

Pennsylvania.  Although PM News culled the article that

instigated the defendants' comments from a Pennsylvania source,

nothing on the PM News web site identifies the web site or its

newsletter as Pennsylvania specific.  To the contrary, everything

about the web site confirms that it is directed to the national

podiatry community at large.

We do not know what percentage of the site's over

11,000 subscribers are from Pennsylvania.  But this information

would not help us because the defendants are the users rather

than the operators of this web site.  Even if a significant

number of subscribers and visitors were Pennsylvania residents,

we could not infer from this that a user intentionally interacted

with the forum state via the web site because a user does not have access to this information.  Unlike the defendant in <u>Calder</u> -- who was the publisher of a newspaper and, therefore, had access to his own circulation information -- there is no evidence here that the defendants had access to the relevant web site user traffic information.  Without such information or <u>some</u> aspect of the web site putting the defendants on notice that their comments would be directed specifically into Pennsylvania, Dr. Gorman cannot show that the defendants' use of the web site establishes that they expressly aimed their comments into the Commonwealth of Pennsylvania.

But our inquiry does not end here.  Dr. Gorman argues that the content of the defendants' comments, which contain references to Pennsylvania, establish that they expressly aimed at activities in Pennsylvania.  We must revisit the content of these statements to appraise this contention.

Dr. Jacobs did not direct his statements into Pennsylvania, but was advocating for strong ethical policing by the podiatry community as a national whole.  The references to Pennsylvania were in passing, and he, like the defendants in <u>Young</u>, was engaging in a policy discussion whose focal point does not specifically involve the forum state.  Nothing about Dr.

18

Gorman's comments identified the problem of frivolous expert witness testimony as a problem idiosyncratic to Pennsylvania, or suggested that Pennsylvania was the specific source of, or audience for, his writing.  Although Dr. Jacobs did mention Pennsylvania, his reference to "the PA State Board of Podiatry (or wherever), ABPS [i.e., the American Board of Podiatric Surgery], ACFAS [i.e., the American College of Foot and Ankle Surgeons]," revealed that he did not intend that his comments specifically target a Pennsylvania audience but sought to reach a national one.  Compl. against Jacobs Ex. A at 8.  It is true that Dr. Jacob suggested that any podiatrist who knew of "those who offer outrageous testimony inconsistent with podiatric/medical fact" should petition the appropriate oversight organizations, including the Pennsylvania Board of Podiatry.  Id.  But there is no evidence that Dr. Jacobs has submitted or even prepared a petition for submission to the Pennsylvania Board of Podiatry. His references to the Pennsylvania State Board of Podiatry and to Dr. Gorman came in the far broader context of providing advice to all members of the PM News community -- hence, his references to the American Board and to the American College -- who come across experts in any fora who provide "egregious and outrageous" testimony.  Id.  In short, no facts link Dr. Jacobs with the

forum other than the source of the article and knowledge that Dr. Gorman resides and practices in Pennsylvania.  This cannot suffice, and so we shall dismiss the claims against Dr. Jacobs for lack of personal jurisdiction.

Dr. Benjamin directed his comment against Dr. Gorman as a paradigmatic "plaintiff's expert", with no inherent connection to Pennsylvania.  Indeed, Dr. Benjamin stated that Dr. Gorman is willing "to travel anywhere and say anything to support frivolous claims".  Compl. against Benjamin Ex. A at 6-7.  This comment on its face attacked Dr. Gorman as "a well known plaintiff's expert" and spoke nothing specifically implicating Pennsylvania.  Dr. Benjamin only referred to Pennsylvania at the very beginning of his comment, noting that the article discussed malpractice insurance rates in this state.  The passing reference to Pennsylvania placed the comment in context and does not establish that it was expressly aimed at the forum, any more than the Young defendants' references to Virginia established that their article was expressly aimed at Virginia. At most, Dr. Benjamin's comment shows that he knew that Dr. Gorman was a podiatrist in Pennsylvania and was commenting on an article about Pennsylvania. As we have seen, the defendant must do more than refer to, or know of, the fact that the plaintiff resides or works in the

forum state to establish personal jurisdiction.  Thus, we do not have personal jurisdiction over Dr. Benjamin and will dismiss the claims against him.

Similarly, Dr. Levin did not expressly aim his comment at Pennsylvania.  His comment involved a specific instance where Dr. Levin believed that Dr. Gorman acted inappropriately as an expert witness in a case whose forum state is not mentioned.[4]  Dr. Levin went into great detail about this particular incident, but nothing in the statement was purposefully directed at Pennsylvania.  Dr. Levin, in fact, did not mention the state at all.  The only link between Dr. Levin's statements and the forum state is the inference that Dr. Levin knew that Dr. Gorman resided in Pennsylvania and the fact that the original article concerned Pennsylvania malpractice insurance rates.  But Dr. Levin's punch line -- "Jack, without people like you, the system might not be as bad off" -- can only fairly be read to implicate the national tort "system" and not merely Pennsylvania's.  This is not enough to establish the requisite minimum contacts over a non-resident defendant.  Therefore, we shall dismiss the claims

---

[4] To be sure, reading the entire comment one can infer that the court was somewhere in Pennsylvania, but the Commonwealth's name is not mentioned.

against Dr. Levin for lack of personal jurisdiction.

As we do not have personal jurisdiction over the defendants, we do not reach the questions raised in their motions to dismiss pursuant Fed. R. Civ. P. 12(b)(6).

BY THE COURT:


__\s\Stewart Dalzell

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JACK GORMAN                    :          CIVIL ACTION
                               :
        v.                     :
                               :
ALLEN JACOBS, et al.           :          NO. 08-2097

ORDER

AND NOW, this 9th day of February, 2009, upon consideration of defendants' motions to dismiss (docket entries #16, 19, 20), plaintiff's responses, and the reply thereto, and for the reasons articulated in the accompanying Memorandum, it is hereby ORDERED that:

1.    The defendants' motions are GRANTED IN PART;

2.    The plaintiff's claims are DISMISSED for lack of personal jurisdiction;

3.    In all other respects, the motions are DENIED WITHOUT PREJUDICE; and

4.    The Clerk of Court shall CLOSE this case statistically.

BY THE COURT:

__\s\Stewart Dalzell